Tauaeebeo, J.
The plaintiff sues for $4,200 and interest, which he avers arises from the violation by the defendant, of a certain contract which they entered into on the 26th of January, 1866. By this contract the plaintiff, who is an engine-maker and machinist, obligated himself to furnish an engine, repair two boilers belonging to defendant, and erect certain machinery to be used in a steam sawmill on the property of the defendant, at the head of the Bay of St. Louis, for the sum of $4,200. The entire work was to be completed in six weeks from the time the contract was entered into. By an additional clause endorsed upon a duplicate of the contract, the defendant agreed to pay the plaintiff $2,100 within six weeks as an instalment or partial payment under the contract. The plaintiff avers that he conveyed to the Old Basin, to be transported to its place of destination, a certain portion of the machinery which he had contracted to furnish in furtherance of his part of the contract, and demanded payment of the first instalment of the money to be paid him, and also required plaintiff to furnish the transportation required by the contract. He alleges that the plaintiff refuses to comply with his part of the contract and attempts altogether to repudiate it.
*506 The defendant admits having entered into the contract, but specially avers that plaintiff did not perform and complete his work according to their agreement, that a portion of the work done by plaintiff is defective, and not finished in a workmanlike manner, and specifies particularly the chimney and steam-drum as not made in accordance with the contract, and points out the defects in the drum, which he avers renders it valuelef s for the purpose it was intended to subserve. He avers that the original contract was annulled and rescinded by a subsequent contract by which be agreed to pay the plaintiff for the work done, and repairs made on the machinery, which at that moment was in defendant’s possession by delivery from plaintiff, and that lie has ever been ready under this last named contract, to pay a just remuneration for such work and repairs, except for the drum and the chimney, which he avers are useless. He prays judgment in his favor, and that plaintiff be condemned to pay all costs, etc. The case was tried before a jury, which rendered a verdict in favor of the plaintiff for the whole amount claimed. After an ineffectual effort to obtain a new trial the defendant appealed.
, It is proper in the outset to remark that we find no evidence in the record, showing that the original contract was annulled by the substitution of the one alleged by the defendant in his answer. We find in a letter written to defendant by plaintiff’s attorney, allusion made to what was probably a proposition by the defendant to pay for the work and repairs done, and annul the original contract. But the defendant was informed by the attorney that the plaintiff would accept the proposition, provided, the defendant paid §1,156 97, the just value of the work done as per bill rendered. We see nothing showing that this modification of the defendant’s proposition was accepted.
Proceeding then to examine the pleadings and evidence in reference to the original contract, we find that on the 8th of March, the day on which the time expired, within which the plaintiff was bound to complete the work he notified, by an agent, the clerk of the defendant who was absent, that the machinery was ready to be shipped according to agreement. Subsequently he addressed the following letter to the defendant:
“I now make atender to you of the boilers and machinery constructed and repaired by me for you under our contract dated January 26, 1866, and offer to perform my part of that contract entirely. A portion of the machinery is now lying at the Old Basin, in the city of New Orleans, and I hereby offer to deliver and erect it, and also the rest, at such point as you may designate according to our contract, and call on you for the transportation stipulated. Will you receive the work, appoint the place, and furnish transportation, and make the first payment, which is past due. Although this tender has been made, I repeat it to afford you a full opportunity to perform your obligation. “W. Golding.”
New Orleans, March 15, 1866.”
It is shown that this letter soon after its date was delivered to the defendant.
It is clear that the engine, boilors and machinery spoken of by the Various witnesses on the trial of the case, were the same which the plaintiff intended to use in the fulfillment of his part of the contract. But the defendant specially alleges grave objections to several important parts *507 of this machinery; ancl he charges likewise that the work was not performed in the manner required by the contract.
A mass of testimony was taken in regard to the quality of the machinery and its adaptation to the purposes for which it was constructed. The witnesses were generally engineers and machinists. Eight witnesses were examined on the part of the plaintiff. Six of these were engineers, •machinists and smiths in enginery. Of these six, four of them are rather vague and indefinite as to whether the work was done in accordance with the contract or not. Of the other two, one speaks of the engine as being “plain, suitable and good,” and elsewhere in his testimony, as being “powerful, strong and well built;” and that he thought “it would last as long as it might be wanted to be used.” Yet, he said he never saw the drum nor the chimney; two pieces of the work especially the subject of controversy. The remaining witness speaks fully on the subject. He represents the work throughout as complete, well adapted to the use for which it was intended and in every respect fulfilling the contract. We notice, however, that this witness was the foreman of the plaintiff’s establishment, and superintended the work. It is not likely that he was inclined to underrate its quality or the manner of its execution. Eive witnesses testified in behalf of the defendant, all men versed in the subjects about which they testified. They point out defects in the work, specify deficiencies that are important, and they specially indicate the ■want of an important attachment to the engine, technically called the governor, which they think indispensable in the steam machinery of a saw-mill, unless by the employment of a man to stand constantly at-a particular point to perform some function which is superseded by the action of ohe “governor.” One of these witnesses, says that generally engines such as that mentioned in the contract have governors; that he has no recollection of ever having seen a saw-mill engine without one. Another, the keeper of a saw-mill, says he could not use the engine in question in his establishment without this appendage. A third never saw an engine of the kind without; a fourth says an engine of the force and power of that described in the contract would not be complete without the governor. One of. the witnesses said he had looked at the contract casually, and that he did not consider the engine finished according to the contract. The clearness and directness of the testimony of the defendant’s witnesses incline us to think that it preponderates over that of the plaintiff’s witnesses. The testimony- of the latter is either vague and inconciusive, or consisting of broad declarations; that of the former is concise specific and to the point.
It is argued by the plaintiff’s counsel that the contract of the parties does not specify an engine with a governor and that the plaintiff could not be required to furnish one. It it held on the other side that the scope and meaning of the contract naturally embrace everything important and usual in the structure of engines and machinery for the purposes of a saw-mill. That the plaintiff, having engaged to furnish an engine for that purpose, that should be complete, the defendant had the right to require, in order to that completeness the attachment of the important appendage called a governor. This question we are not required incidentally to determine. It is apparent to us from a scrutiny of tffe entire testimony in this case, that the plaintiff has not fulfilled sufficiently *508 liis own obligations under the contract to authorize him to recover from the defendant upon an alleged violation of his part of it.
We see no ground for the rendition of the judgment in the Court below. If the defendant has violated the contract and been put properly in default, he could only be made liable for the damages sustained by the other party in consequence of such violation. C. C. Article 1920.
No damages are proved; yeta judgment is rendered for the whole amount stipulated for the entire work, and the materials to be furnished in its construction. The inexecution of an obligation does not imply the incurring of a debt. The delinquent is responsible in damages for his failure to comply. 1 L. R., p. 97.
We have not before us all the facts necessary for an adjustment of this litigation and consider that justice requires that the case should be remanded. The defendant we think was entitled to a new trial and that it should have been granted.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that this case be remanded to the Court of the first instance, for further proceedings according to law. The plaintiff and appellee paying costs of this appeal.